IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PRODUCE SOURCE PARTNERS, INC.,

       Plaintiff,

    v.                             Civil Action No. 3:24cv55

7-ELEVEN, INC., *et al.,*

       Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on Defendants 7-Eleven, Inc., Joseph M. DePinto, David Seltzer, and Stanley Reynold's (collectively, the "Defendants") Motion to Dismiss, or Alternatively Transfer, the Amended Complaint (the "Motion"). (ECF No. 27.)[1] Plaintiff Produce Source Partners, Inc. ("Produce Source") responded in opposition to the Motion, (ECF No. 31), and Defendants replied, (ECF No. 32).

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.

For the reasons articulated below, the Court will grant the Motion. (ECF No. 27.) The Court will dismiss Counts 3–5 for lack of personal jurisdiction over the defendants named in those counts. The Court will dismiss Counts 1–2 against 7-Eleven, Inc. for failure to state a

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

claim. Finally, were it to exercise supplemental jurisdiction[2] over the state law claims, the Court would dismiss counts 6–7 for failure to state a claim.

## I. Factual and Procedural Background[3]

### A.    Factual Allegations

Produce Source is "a Virginia corporation . . . engaged in the business of buying and selling wholesale quantities of fresh fruits and vegetables [] in interstate commerce, and was at all relevant times subject to and licensed under the provisions of" the Perishable Agricultural Commodities Act ("PACA").  (ECF No. 22 ¶ 5.)  7-Eleven is "a Texas corporation having its principal place of business in Irving, Texas" and "was registered to do business in [] Virginia[.]" (ECF No. 22 ¶ 6.)  7-Eleven was "engaged in the business of buying wholesale quantities of [p]roduce in interstate commerce, and was at all relevant times subject to licensure under the provisions of PACA as a dealer."  (ECF No. 22 ¶ 6.)

"Joseph M. DePinto is and was the Chief Executive Officer of 7-Eleven . . . who controlled the operations of 7-Eleven."  (ECF No. 22 ¶ 7.)  Plaintiff alleges that as Chief Executive Officer, Mr. DePinto "ha[d] ultimate responsibility for the actions of 7-Eleven . . . and was in a position of control over the PACA trust assets belonging to Plaintiff."  (ECF No. 22

---

[2] 28 U.S.C. § 1367(a) states, in pertinent part:
[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

[3] In considering the Motion, (ECF No. 27), the Court will assume the well-pleaded factual allegations in the Amended Complaint to be true and will view them in the light most favorable to Produce Source. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

¶ 7.)  "David Seltzer is and was the Executive Vice President & Chief Financial Officer of 7-Eleven . . . responsible for the company's finance functions[.]"  (ECF No. 22 ¶ 8 (internal quotation marks omitted).)  "In his role as Executive Vice President and Chief Financial Officer, [Mr.] Seltzer . . . is and was in a position of control over the PACA trust assets belonging to Plaintiff."  (ECF No. 22 ¶ 8.)  "Stanley Reynolds is and was the President of 7-Eleven . . . responsible for the financial, facility, and procurement operations of 7-Eleven[.]"  (ECF No. 22 ¶ 9.)  "[A]s a result[, Mr. Reynolds] is and was in a position of control over the PACA trust assets belonging to Plaintiff."  (ECF No. 22 ¶ 9.)

Beginning on approximately June 1, 2018, Produce Source "began selling wholesale quantities of perishable agricultural commodities ('Produce') that had been moved in interstate commerce or contemplation thereof . . . to 7-Eleven."  (ECF No. 22 ¶ 11.)  "7-Eleven issued a purchase order to [Produce Source] for all items it requested for purchase and delivery by [Produce Source]."  (ECF No. 22 ¶ 12.)  Produce Source then "delivered those items to a Central Distribution Center ('CDC') operated by 7-Eleven, as designated by the Purchase Order", which "listed the item type, quantity, and price that 7-Eleven agreed to pay for each item."  (ECF No. 22 ¶ 12–13.)  Produce Source "generated an invoice for each Purchase Order listing all of the items and prices shown on the Purchase Order issued by 7-Eleven", and Produce Source "delivered a copy of each invoice to 7-Eleven when the Produce and other goods were delivered to the corresponding CDC."  (ECF No. 22 ¶¶ 14–15.)  "7-Eleven issued lumpsum payments to [Produce Source] for the Produce and other good purchased" that "indicated the CDC to which the payment was to be applied", but "did not designate the invoice or invoices to be paid by the lumpsum payment."  (ECF No. 22 ¶¶ 16–18.)

"Between January 1, 2023, and September 21, 2023, and pursuant to Purchase Orders issued by 7-Eleven, [Produce Source] sold and delivered to eleven (11) of 7-Eleven's various CDCs Produce and other goods having an aggregate total value of $21,639,809.78." (ECF No. 22 ¶ 19.) Produce Source alleges that it "issued invoices to 7-Eleven for all of the sales that are the subject of this Amended Complaint." (ECF No. 22 ¶ 28.) The front of the invoices contained the following language:

> The perishable agricultural commodities listed on this invoice are sold subject to statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.
>
> Interest at 1.5% added to unpaid balance. Buyer agrees to pay interest and reasonable attorney's fees incurred to collect any balance due hereunder. Pre-judgment interest and any attorney's fees incurred to collect any balance due hereunder shall be considered sums owing in connection with this transaction under the PACA Trust.

(ECF No. 22 ¶¶ 29–30.)

"Between January 25, 2023, and October 26, 2023, 7-Eleven issued lumpsum payments to [Produce Source] totaling $18,215,560.41." (ECF No. 22 ¶ 20.) Produce Source "preserved its interest in the PACA Trust for all of the Produce [] sold and delivered to 7-Eleven." (ECF No. 22 ¶ 31.) In 2023, Produce Source "issued price adjustments and credits to 7-Eleven . . . totaling $247,009.00." (ECF No. 22 ¶ 21.) Therefore, "7-Eleven owes [Produce Source] the total principal amount of $3,177,240.38 [], plus interest and attorneys' fees." (ECF No. 22 ¶ 22.) Of the total principal amount, "7-Eleven owes [Produce Source] $837,183.32 for the Produce sold to and accepted by 7-Eleven under the PACA[.]⁴" (ECF No. 22 ¶ 23.) Produce Source "has

---

⁴ Produce Source alleges that "[a]t all relevant times, 7-Eleven operated subject to the requirements of PACA." (ECF No. 22 ¶ 26.)

4

repeatedly requested payment for the Produce and other goods, but 7-Eleven has failed to pay in full." (ECF No. 22 ¶ 34.) As part of its breach of contract claim in Count 6 (but not in Counts 1–5), Produce Source says it "performed all the duties, obligations, and conditions precedent on its part to be performed under the invoices." (ECF No. 22 ¶ 103.)

### B.    Procedural Background

On January 24, 2024, Produce Source filed the initial Complaint. (ECF No. 1.) On April 15, 2024, Produce Source filed the Amended Complaint, alleging the following causes of action:

**Count 1:** Failure to Pay Trust Funds (against Defendant 7-Eleven)
**Count 2:** Failure to Make Prompt Payment (against Defendant 7-Eleven)
**Count 3:** Breach of Fiduciary Duty to Plaintiff (against Defendant DePinto)
**Count 4:** Breach of Fiduciary Duty to Plaintiff (against Defendant Seltzer)
**Count 5:** Breach of Fiduciary Duty to Plaintiff (against Defendant Reynolds)
**Count 6:** Breach of Contract (against Defendant 7-Eleven)
**Count 7:** Unjust Enrichment (against Defendant 7-Eleven)

(ECF No. 22, at 6–13.) On May 13, 2024, Defendants filed their Motion to Dismiss. (ECF No. 27.) On June 10, 2024, after the Court granted a 14-day extension of time for Produce Source to do so, (ECF No. 30, at 1), Produce Source timely responded, (ECF No. 31), and Defendants replied, (ECF No. 32).

For the reasons articulated below, the Court will grant Defendants' Motion to Dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 27.)

### II.  Standard of Review

### A.    Motion to Dismiss Under Rule 12(b)(2)

"When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst*

*Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). When a district court considers a challenge to personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction, rather than show jurisdiction by a preponderance of the evidence. *Id.*; *see also Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Machulsky v. Hall*, 210 F. Supp. 2d 531, 537 (D.N.J. 2002) ("[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction." (quoting *Patterson v. Fed. Bureau of Investigation*, 893 F.2d 595, 603–04 (3d Cir. 1990)).). In straightforward cases, like the one before the Court, "the Court may resolve [a 12(b)(2) motion] based on the affidavits and the supporting documents" without a hearing. *Initiatives Inc. v. Korea Trading Corp.*, 991 F. Supp. 476, 477–78 (E.D. Va. 1997).

    "The court, in deciding whether a plaintiff has met th[e] burden [of making a prima facie case supporting personal jurisdiction], must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Brooks v. Motsenbocker Advanced Devs., Inc.*, 242 F. App'x 889, 890 (4th Cir. 2007). Still, a plaintiff cannot rely on "bare pleadings alone" after a defendant properly challenges personal jurisdiction. *Machulsky*, 210 F. Supp. 2d at 537 (citation omitted). Instead, "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits and competent evidence . . . . [A] plaintiff must respond with actual proof[], not mere allegations." *Id.* (citation omitted); *see also Williams v. FirstPlus Home Loan Trust 1996-2*, 209 F.R.D. 404, 410 (W.D. Tenn. 2002) (concluding that a court need not "'ignore undisputed factual

representations of the defendant which are consistent with the representations of the plaintiffs.'" (quoting *Kerry Steel v. Paragon Indus., Inc.,* 106 F.3d 147, 153 (6th Cir. 1997))).

Federal courts exercise personal jurisdiction in the manner provided by state law. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). Therefore, a district court must first decide whether Virginia state law permits the court to exercise personal jurisdiction over the defendant, and second, whether the exercise of such jurisdiction comports with the due process requirements of the Fourteenth Amendment. *Id.*; *Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997).

"Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'" *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (quoting *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir. 1996) (internal citation omitted). Accordingly, the inquiry becomes whether the defendants maintain sufficient minimum contacts with the forum state so as not to offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

"The standard for determining the existence of personal jurisdiction over a nonresident defendant varies, depending on whether the defendant's contacts with the forum state also provide the basis for the suit." *Carefirst*, 334 F.3d at 397. "If the defendant's contacts with the State are also the basis for the suit, those contacts may establish specific jurisdiction. . . . [I]f the defendant's contacts with the State are not also the basis for suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with

7

the State."[5] *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)

(citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984)).

    The United States Court of Appeals for the Fourth Circuit has adopted a three-part test to

determine whether specific jurisdiction exists. *Reynolds Foil Inc. v. Pai*, No. 3:09cv657 (HEH),

2010 WL 1225620, at *2 (E.D. Va. Mar. 25, 2010). The Court must consider: "(1) the extent to

which the defendant purposefully avail[ed] itself of the privilege of conducting activities in the

State;[6] (2) whether the plaintiffs' claims arise out of those activities directed at the State;[7]

---

[5] General jurisdiction exists only when a defendant's "'affiliations with the [s]tate are so "continuous and systematic" as to render [it] *essentially at home* in the forum [s]tate." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (emphasis added). Nothing in the record indicates, and Plaintiff does not contend, that Defendants engaged in "continuous and systematic" activities within Virginia. *ALS Scan*, 293 F.3d at 712. Consequently, the Court's inquiry focuses on whether each Defendant's conduct allows the Court to exercise specific personal jurisdiction over each Defendant.

[6] With respect to the first factor, "no clear formula [exists] for determining what constitutes 'purposeful availment.'" *Reynolds Foil*, 2010 WL 1225620, at *2. However, the Supreme Court long has held that the purposeful availment prong of the personal jurisdiction analysis can be met if a defendant's "intentional conduct [in the foreign state was] calculated to cause injury to [the plaintiff] in [the forum state]." *Calder v. Jones*, 465 U.S. 783, 791 (1984) ("Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their Florida conduct in California."). *Calder*, however, does not vest jurisdiction in a state merely because it serves as the locus of the plaintiff's injury. *See Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("[M]ere injury to a forum resident is not a sufficient connection to the forum.").

    The "proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum *in a meaningful way*." *Id.* (emphasis added); *see also ESAB*, 126 F.3d at 626 ("Although the place that the plaintiff feels the alleged injury is plainly relevant to the inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld.").

[7] "The second prong of the test for specific jurisdiction . . . requires that the defendant's contacts with the forum state form the basis of the suit." *Consulting Eng'rs*, 561 F.3d at 278–79 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros*, 466 U.S. at 414). The Court need not address this prong because Defendants do not meet the "purposeful availment" prong of the analysis. *See ALS Scan*, 293 F.3d at 712.

and[,] (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."[8]
*ALS Scan*, 293 F.3d at 712 (first alteration in original) (internal quotation marks omitted). "If, and only if . . . the plaintiff has satisfied this first prong of the test for specific jurisdiction need [the Court] move on to a consideration of prongs two and three." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

**B.    Motion to Dismiss Under Rule 12(b)(6)**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

---

[8] The third prong of the specific jurisdiction test "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." *Consulting Eng'rs.*, 561 F.3d at 279. The Court need not address this prong for the reasons stated above.

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Giacomelli*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (concluding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))).

### III. Analysis

Produce Source brings seven claims: four against 7-Eleven and one against each Individual Defendant. (ECF No. 22, at 6–14.) Produce Source's claims against 7-Eleven are failure to pay trust funds, failure to make prompt payment, breach of contract, and unjust enrichment. (ECF No. 22, at 6–7, 12–14.) Produce Source also brings claims for breach of fiduciary duty against Joseph M. DePinto, David Seltzer, and Stanley Reynolds (collectively the "Individual Defendants"). (ECF No. 22, at 7–12.) The Individual Defendants request that the Court dismiss the Amended Complaint for lack of personal jurisdiction. (ECF No. 27, at 1.) All Defendants request that the court dismiss the Amended Complaint for failure to state a claim. (ECF No. 27, at 1.) In the alternative, all Defendants request that the Court transfer the case to the Northern District of Texas. (ECF No. 27, at 1.) Because Produce Source: (1) fails to

10

establish personal jurisdiction over the Individual Defendants, (2) fails to state a claim for relief

against 7-Eleven, and (3) would fail to establish state law claims of breach of contract or unjust

enrichment even if the Court to exercise supplemental jurisdiction, the Court will grant

Defendants' Motion to Dismiss. (ECF No. 27.)

### A.    Produce Source Does Not Establish Specific Personal Jurisdiction Over the Individual Defendants in Counts 3–5

Produce Source's allegations are insufficient to make a prima facie showing that the

Individual Defendants "purposefully avail[ed]" themselves of conducting activities in Virginia.

*ALS Scan*, 293 F.3d at 712; *see also Carefirst*, 334 F.3d at 397. First, Produce Source contends

that "this Court has personal jurisdiction over [the Individual] Defendants because they were

fiduciaries of the PACA trust, which arose in Virginia[.]" (ECF No. 31, at 17–18.) However,

the Individual Defendants' mere role as fiduciaries of the PACA trust is insufficient to allow this

Court to exercise personal jurisdiction over them. *Indep. Printers Worldwide, Inc. v. Cole*, No.

3:15-cv-185 (JAG), 2015 WL 4705507, at *5 (E.D. Va. Aug. 6, 2015) ("[P]ersonal jurisdiction

over an individual officer, director, or employee of a corporation does not automatically follow

from personal jurisdiction over the corporation . . . . Personal jurisdiction must be based on an

individual's personal contacts or purposeful availment of the forum state.") (internal quotation

marks and citation omitted).

Second, Produce Source contends that the "Court exercises specific jurisdiction over the

Individual Defendants because the injuries arise from their control over 7-Eleven, its operations,

and the PACA Trust within Virginia," including the Individual Defendants' "fail[ure] to direct 7-

Eleven to issue payment from the PACA trust and/or to properly maintain the PACA trust."

(ECF No. 31, at 18–19.) In analyzing whether an entity has purposefully availed itself of

engaging in activities in a forum state, the Court "look[s] to the quality and nature of the

11

contacts[.]" *See Consulting Eng'rs*, 561 F.3d at 279.  Produce Source alleges that Mr. DePinto

"controlled the operations of 7-Eleven" "and was in a position of control over the PACA trust

assets belonging to [Produce Source]."  (ECF No. 22 ¶ 7.)  Produce Source similarly states that

Mr. Seltzer "was responsible for controlling the financial operations of 7-Eleven" "and was in a

position of control over the PACA trust assets belonging to [Produce Source]."  (ECF No. 22

¶ 8.)  Finally, Produce Source says that Mr. Reynolds "was responsible for the financial, facility,

and procurement operations of 7-Eleven and as a result is and was in a position of control over

the PACA trust assets belonging to [Produce Source]."  (ECF No. 22 ¶ 9.)

      Produce Source's claims regarding the Individual Defendants' contacts with Virginia boil

down to vague allegations of "control over the PACA trust assets belonging to [Produce

Source]."  (ECF No. 22 ¶¶ 7–9.)  Yet Produce Source's Amended Complaint is bereft of any

allegations respecting the Individual Defendants' contacts with Virginia.  This does not, even

read favorably, suggest that this Court could exercise personal jurisdiction over these defendants.

By comparison, another court in this district concluded that it lacked personal jurisdiction over

Oklahoma defendants even though one defendant visited Virginia, signed a consulting agreement

on behalf of a corporate entity with a Virginia company, and exchanged "dozens if not hundreds

of emails and telephone calls" with individuals in Virginia and another defendant signed four

agreements involving Virginia companies but engaged in fewer communications.  *See Cole*,

2015 WL 4705507, at *4.  Despite this level of interaction that far exceeds any presented here,

the *Cole* court concluded that it would "offend 'traditional notions of fair play and substantial

justice'" to exercise personal jurisdiction over these Oklahoma defendants. *See Cole*, 2015 WL 4705507, at *6 (quoting *Int'l Shoe*, 326 U.S. at 316). So too here.

Moreover, the Amended Complaint is devoid of *any* "non-exclusive factors" courts consider when deciding "whether a defendant has engaged in [] purposeful availment." *Consulting Eng'rs.*, 561 F.3d at 278. Produce Source does not allege that the Individual Defendants maintained offices in Virginia. *See id.* Produce Source does not allege that the Individual Defendants owned property in Virginia. *See id.* Nor does Produce Source allege that the Individual Defendants solicited business in Virginia or engaged in any in-person contact in Virginia. *See id.* at 280. No communications, signed agreements, or visits from any individual defendant are in the record before the Court. *See Cole*, 2015 WL 4705507, at *5. The dearth of contacts alleged by Produce Source does not support the conclusion that—read even most favorably—the Individual Defendants purposefully availed themselves of the privilege of doing business in Virginia. *Consulting Eng'rs.*, 561 F.3d at 279–80 (finding a corporate defendant's contact with a state too attenuated to justify the exercise of personal jurisdiction when the defendant "did not have officers or employees in Virginia, [] did [not] own property there, [and] had no on-going business activity in Virginia").

Finally, Produce Source asserts that "[b]ecause the trust and the fiduciary duties to preserve those assets arose in Virginia, the breach of those fiduciary duties by failing to preserve those assets and/or turn them over to Plaintiff also occurred in Virginia." (ECF No. 31, at 20.) This again falls well short of plausible allegations of a claim. "'The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum *in a meaningful way.*'" *McNeil v. Biaggi Prods., LLC*, No. 3:15cv751

13

(MHL), 2017 WL 2625069, at *7 (E.D. Va. June 16, 2017) (emphasis in original) (quoting *Walden*, 571 U.S. at 290).

Because the Court may not exercise personal jurisdiction over the Individual Defendants, the Court will dismiss Counts 3, 4, and 5 of the Amended Complaint.[9]  (ECF No. 22, at 7–12.)

**B.**   **Produce Source Fails to State a Claim Against 7-Eleven**

    **1.**   **Produce Source Fails to State a Claim for Violations of PACA Against 7-Eleven**

Produce Source fails to state a claim under PACA in Counts 1 and 2 because—as a threshold matter—it fails to plausibly allege that the goods for which it alleges 7-Eleven failed to pay constituted "perishable agricultural commodities." *Carter v. Michael Cutler Co.*, No. 1:12cv95, 2013 WL 4788283, at *5 (M.D.N.C. Sept. 6, 2013), *recommendation adopted*, 2013 WL 12304562 (M.D.N.C. Oct. 18, 2013).  As to Count 1, Produce Source further fails to plausibly allege that it "provided written notice of its intent to preserve its rights under PACA *within 30 days after payment became due*." *Id.* (emphasis added).  As to Count 2, Produce Source fails to plead facts regarding when 7-Eleven accepted the goods.  As a result of these defects, Produce Source's Amended Complaint fails to "give [7-Eleven] fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (second alteration in the original) (citation and internal quotation marks omitted).

---

[9] The Court denies Produce Source's request for "authority to conduct limited discovery regarding Individual Defendants' activities within Virginia" if the "Court determines that Plaintiff has not asserted prima facia evidence of this Court's jurisdiction over Individual Defendants." (ECF No. 31, at 21.)  "When a plaintiff offers only speculation or conclusory assertions about contacts within a forum state, a court is within its discretion in denying jurisdictional discovery." *Carefirst*, 334 F.3d at 402.

a.    **Applicable Law**

"PACA governs transactions involving perishable agricultural commodities, which are defined as fresh fruits and fresh vegetables of every kind and character (hereinafter 'produce')." *Coastal Sunbelt Produce*, No. 1:16cv449 (TCB), 2016 WL 5661558, at *3 (E.D. Va. Sept. 1, 2016), *recommendation adopted*, 2016 WL 5662019 (E.D. Va. Sept. 29, 2016) (citing 7 U.S.C. ¶ 499a(b)(4)). "Buyers that receive or contract to receive at least 2,000 pounds of produce in any day, in interstate or foreign commerce, are considered 'dealers' under and are subject to the PACA."[10] *Coastal Sunbelt*, 2016 WL 5661558, at *3 (citing 7 U.S.C. 499a(b)(6); 7 C.F.R. §§ 46.2(m), 46.2(x)). "Under PACA, commission merchants, dealers, and brokers hold, in trust, the produce and any proceeds from the sale of such produce for the benefit of unpaid produce sellers until full payment has been made." *Carter*, 2013 WL 4788283, at *5 (citing 7 U.S.C. § 499e(c)(2)).

"A trust beneficiary may [] seek to enforce payment from the trust in a federal district court." *Coastal Sunbelt*, 2016 WL 5661558, at *3. "To become a valid PACA trust beneficiary: (1) the produce in question must be 'perishable agricultural commodities'"; (2) the commodities must have been received by a commission merchant, a dealer, or broker; and (3) the claimant must have provided written notice of its intent to preserve its rights under PACA within 30 days after payment became due." *Carter*, 2013 WL 4788283, at *5 (quoting *C & G Farms, Inc. v. Capstone Bus. Credit, LLC*, CV F09-0032, 2011 WL 677487, at *5 (E.D. Cal. Feb. 17, 2011)).

---

[10] Per the Amended Complaint, 7-Eleven is a dealer subject to PACA. (ECF No. 22 ¶¶ 24, 26 (stating that "7-Eleven received more than 2,000 pounds of produce in a given day well before the transactions at issue" and that "[a]t all relevant times, 7-Eleven operated subject to the requirements of PACA")).

Thus, to state a claim for failure to pay trust funds under PACA, a plaintiff must plead facts demonstrating that it satisfies all three elements necessary to be a PACA trust beneficiary.

> **b.    Produce Source's Claim for Failure to Pay Trust Funds in Count 1 Falters**

First, Produce Source fails to allege sufficient facts demonstrating that the goods for which it alleges 7-Eleven failed to pay constituted "perishable agricultural commodities." *Carter*, 2013 WL 4788283, at *5. While Produce Source generally alleges that beginning on or around June 1, 2018, it sold "perishable agricultural commodities . . . that had been moved in interstate commerce . . . to 7-Eleven", (ECF No. 22 ¶ 11), it fails to plausibly allege facts showing that the specific goods that 7-Eleven failed to pay for were perishable agricultural commodities. Produce Source broadly alleges that "[b]etween January 1, 2023 and September 21, 2023, and pursuant to Purchase Orders issued by 7-Eleven, Plaintiff sold and delivered to eleven (11) of 7-Eleven's various CDCs Produce ***and other goods*** having an aggregate value of $21,639,809.78." (ECF No. 22 ¶ 19 (emphasis added).) Produce Source alleges that "[b]etween January 25, 2023, and October 26, 2023, 7-Eleven issued lumpsum payments to Plaintiff[.]" (ECF No. 22 ¶ 20.) "The lumpsum payments did not designate the invoice or invoices to be paid by the lumpsum payment." (ECF No. 22 ¶ 18.) Without identifying even one invoice or consequent non-payment, Produce Source then asserts that 7-Eleven owes an "aggregate value [for] the Produce and other goods sold and delivered to 7-Eleven," or a "Total Principal Debt" of "$3,177,240.38." (ECF No. 22 ¶ 22.)

Produce Source alleges—again without specificity—that "[o]f the Total Principal Debt, 7-Eleven owes Plaintiff $837,182.32 for the Produce sold to and accepted by 7-Eleven under the PACA." (ECF No. 22 ¶ 23.) But this claim is conclusory. The Amended Complaint lacks even one plausible allegation of a specific instance of failed payment supporting its naked assertion of

the total amounts owed, or its (oddly delayed)[11] conclusory allegation that it "performed all the duties, obligations, and conditions precedent on its part to be performed under the invoices." (ECF No. 22 ¶ 103.)

Produce Source does not plead facts showing which debt 7-Eleven owes is for perishable agricultural commodities as opposed to other goods. It does not attach to its pleadings any invoices or otherwise specify which goods it claims it sold to 7-Eleven, when they were delivered to or accepted by 7-Eleven, or how much of the lumpsum payments were applied to each invoice. Courts in this district have found that a plaintiff states a claim for failure to pay under PACA when the plaintiff's allegations identify the specific type "perishable agricultural commodities" or goods at issue (and the amount owed). *See, e.g.*, *Turkey Knob Growers, Inc. v. East Coast Impex LLC*, No. 1:18-cv-01295 (TSE/IDD), 2019 WL 3729002, at *3–4 (E.D. Va. July 22, 2019) (citing exhibit to complaint containing invoices showing product type, as well as price, amount, and ship date), *recommendation adopted*, 2019 WL 3728258 (E.D. Va. Aug. 7, 2019); *Coastal Sunbelt*, 2016 WL 5661558, at *3 (citing exhibit to motion for default judgment containing invoices showing product type, as well as price, amount, and order date). Simply labeling the goods at issue "perishable agricultural commodities" without pleading facts to support that conclusion insufficiently meets element one of the test to establish that Produce Source is a valid PACA trust beneficiary, and cannot to survive a motion to dismiss. *See Twombly*, 550 U.S. at 555. This is especially true when over $2 million of "other" (also unidentified) goods appear in the Amended Complaint. (ECF No. 22 ¶¶ 22–23.)

---

[11] Produce Source offers this conclusory allegation only as to Count 6, not as to Counts 1–5. (*See* ECF No. 22 ¶ 103.)

17

Second, Produce Source fails to adequately allege the third element of a failure to pay claim under PACA— that it "provided written notice of its intent to preserve its rights under PACA *within 30 days after payment became due*." *Carter*, 2013 WL 4788283, at *5 (emphasis added). Produce Source does not plead facts showing when payment became due for the goods it sold to 7-Eleven. Thus, while it generally alleges that its "invoices contain . . . language required by 7 U.S.C. § 499e(c)(4) to preserve its rights under the PACA Trust", (ECF No. 22 ¶¶ 28–29), it fails to plead that this written notice was provided within 30 days after payment became due. As in Count 1, Count 2 insufficiently pleads a portion of the PACA beneficiary test and cannot, therefore, state a claim under PACA for failure to pay trust funds.

> **c.    Produce Source's Claim for Failure to Make Prompt Payments in Count 2 Falters**

Produce Source similarly fails to adequately state a claim in Count 2 for failure to make prompt payment under PACA. As explained above, Produce Source insufficiently pleads a portion of the PACA beneficiary test by failing to show that the goods at issue are perishable agricultural commodities. Therefore, Produce Source fails to state a claim for failure to make prompt payments under PACA.

Further, Produce Source's claim in Count 2 fails because it fails to plead facts regarding precisely when 7-Eleven accepted the goods at issue. "PACA requires dealers to make prompt payment with respect to any transaction of produce." *Coastal Sunbelt*, 2016 WL 5661558, at *4 (citing 7 U.S.C. § 499b(4)). "'Prompt payment' for produce purchased by a buyer is defined by ten days after the day on which the buyer accepted the produce." *Id.* (citing 7 C.F.R. § 46.2(aa)(5)). "If a party is injured by such a violation, that party may recover its damages from the buyer." *Id.* (citing 7 U.S.C. § 499e(a)–(b)). Produce Source fails to plead facts plausibly

18

showing when 7-Eleven accepted the goods. Thus, it fails to state a claim for failure to make prompt payment.

### 2. The Court Declines to Exercise Supplemental Jurisdiction, but Produce Source Would Fail to State a Claim in Counts 6 and 7 Even if it Did

The two remaining counts allege state law claims over which the Court does not have original jurisdiction.[12] The Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [subject matter] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). But even if it were to analyze the two state law claims in Counts 6 and 7, Produce Source would fail to state a claim.

#### a. Were the Court to Exercise Supplemental Jurisdiction, Produce Source Would Fail to State a Claim for Breach of Contract in Count 6

Were this Court to reach it, Produce Source would fail to state a claim for breach of contract under Virginia law in Count 6 of its Amended Complaint because it fails to plead facts plausibly showing "a legally enforceable obligation" of 7-Eleven. *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). To state a claim for breach of contract under Virginia law,[13] a plaintiff

---

[12] "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction over a claim that they form part of the same case or controversy." 28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3).

[13] "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under Virginia law, "[i]n the absence of an enforceable agreement on choice of law, the contract is governed by the law of Virginia." Va. Code § 59.1-501.9(b). Neither party presents

must plausibly allege: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of the obligation; and, (3) an injury or harm caused by the defendant's breach. *Id.*

Produce Source's Amended Complaint alleges that 7-Eleven issued purchase orders to Produce Source containing "the item type, quantity, and price that 7-Eleven agreed to pay for each item" and that Produce Source "generated an invoice for each Purchase Order listing all of the items and prices shown on the Purchase Order issued by 7-Eleven." (ECF No. 22 ¶¶ 13–14.) But Produce Source fails to append the purchase orders or invoices to its Amended Complaint or otherwise indicate the type, quantity, or price of the goods at issue. "Without specificity of terms, there is no contract." *Dean v. Morris*, 756 S.E.2d 430, 433 (Va. 2014) (stating that in order to be binding, an agreement "must be sufficiently definite to enable a court to give it an exact meaning"). As with its federal law claims under PACA, Produce Source's conclusory allegation that "Plaintiff's invoices to 7-Eleven constitute valid and enforceable agreements between the Parties" is insufficient to show "a legally enforceable obligation." *Filak*, 594 S.E.2d at 614; *see also Walsh v. Bank of America*, NA, No. 1:11-cv-1168 (AJT), 2012 WL 13020695, at *2 (E.D. Va. Feb. 15, 2012) (dismissing breach of contract claim when plaintiff failed to allege "the specific contractual provisions that [] defendants breached, the specific conduct of each defendant that allegedly violated each identified contractual provision, and the dates on which the alleged conduct occurred"); *see also Xia Bi v. McAuliffe*, No. 1:17-cv-01459 (CMH), 2018 WL 10483857, at *2 (E.D. Va. Mar. 30, 2018) (dismissing breach of contract

---

evidence of an agreement on choice of law. Therefore, Virginia law governs the Court's analysis of Produce Source's breach of contract claim.

claim when plaintiff did "not cite to any specific provisions in the Agreement that Defendants are alleged to have breached").

Even if the Court were to reach Count 6, Produce Source would fail to state a claim for breach of contract under Virginia law.

> **b.      Were the Court to Exercise Supplemental Jurisdiction, Produce Source Would Fail to State a Claim for Unjust Enrichment in Count 7**

Finally, were the Court to reach the Virginia law unjust enrichment claim in Count 7 of the Amended Complaint, it would dismiss the claim because Produce Source fails to identify the benefit it conferred upon 7-Eleven so as to "give [7-Eleven] fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (second alteration in the original) (citation and internal quotation marks omitted).  To state a claim for unjust enrichment under Virginia law, a plaintiff must plausibly allege: "(1) the plaintiff conferred a benefit on the defendant, (2) the defendant knew of the benefit conferred, and (3) the defendant accepted or retained the benefit under circumstances rendering it inequitable for the defendant to do so without paying for its value." *Daniel v. Wells Fargo Bank, N.A.*, No. 1:13-cv-00612 (GBL), 2013 WL 5723704, at *8 (E.D. Va. Oct. 17, 2013) (citing *Schmidt v. Household Finance Corp.*, 661 S.E.2d 834, 838 (Va. 2008)).  As discussed above, Produce Source fails to allege the types or quantities of goods at issue, the prices at which Produce Source sold the goods, or dates on which 7-Eleven allegedly accepted the goods.  Without this information, Produce Source's claim that "7-Eleven has been unjustly enriched in the amount of $3,177,240.38 by failing to pay Plaintiff for the Produce and other goods it received from Plaintiff" is conclusory and would fail to fairly apprise 7-Eleven of the nature of the claim.

21

Even if the Court were to reach Count 7, Produce Source would fail to state a claim for unjust enrichment under Virginia law.

### C. The Court Will Deny Produce Source's Procedurally Improper Request for Leave to Amend

In its response to Defendants' Motion, Produce Source "respectfully requests that it be granted leave to [a]mend" "[t]o the extent the Court finds any Count fails to allege a claim upon which relief can be granted or that this Court lacks personal jurisdiction over the Individual Defendants[.]" (ECF No. 31, at 21.)  However, Produce Source failed to file a motion for leave to amend or present the Court with a proposed Second Amended Complaint.  Produce Source has "not met the requirements for filing a request for leave to amend other Federal Rules of Civil Procedure 7(b) and 15(a)[.]" *Employees' Ret. Sys. of the City of Baton Rouge and Parish of East Baton Rouge v. Macrogenics, Inc.*, 61 F.4th 369, 394 (4th Cir. 2023).  Thus, the Court will deny Produce Source's request for leave to amend.

### IV.  Conclusion

For the reasons articulated above, the Court will grant Defendants' Motion to Dismiss. (ECF No. 27.)  The Court will dismiss without prejudice Plaintiff's Amended Complaint.  (ECF No. 22.)

An appropriate Order shall issue.

Date:  **2/24/25**
Richmond, Virginia

_____
/s/
M. Hannah Lauck
United States District Judge